UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                   )
PAUL F. SHEDLOCK,                  )
                                   )
        Plaintiff,                 )
                                   )   Civil Action No. 11-11603-NMG
v.                                 )
                                   )
GINA SPENCER,                      )
                                   )
        Defendant.                 )
_____)

REPORT AND RECOMMENDATION ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
[Docket No. 70]

December 6, 2013

Boal, M.J.

Pro se plaintiff Paul F. Shedlock ("Shedlock"), who is confined at the Nemasket Correctional Center ("Center") in Bridgewater, Massachusetts as a sexually dangerous person, filed a complaint alleging violations of 42 U.S.C. § 1983. Docket No. 1. Specifically, Shedlock alleges that he has been denied the use of a working wheelchair at the Center and was forced to use a wrongly sized walker, causing him physical injury. Id. Defendant Gina Spencer has moved for summary judgment.[1] Docket No. 70. For the following reasons, this Court recommends that the District Court grant the motion.

---

[1] The District Court referred the motion to the undersigned on May 9, 2013 for a report and recommendation. Docket No. 83.

I.      PROCEDURAL BACKGROUND

Shedlock filed a verified complaint on September 12, 2011.[2]  Docket No. 1.  Shedlock names Gina Spencer ("Spencer"), whom he identifies as the person who "controls" the Health Services Unit at the Center, as the sole defendant.  Docket No. 1 at ¶ 2.  Spencer filed an answer to the complaint on December 5, 2011.  Docket No. 9.

On February 5, 2013, the District Court held a hearing on Shedlock's motion for a temporary restraining order and permanent injunction.  Docket No. 59.  The District Court noted that the parties agreed that the original issue in the Complaint regarding the wheelchair had been resolved.  Id.  The Court denied Shedlock's motion for a temporary restraining order and permanent injunction and set a briefing schedule for dispositive motions.  Id.

On February 25, 2013, Shedlock filed a motion to supplement the Complaint.  Docket No. 67.  Specifically, as a further claim under Section 1983, he sought to add an October 6, 2011 incident in which he fell allegedly as a result of a faulty wheelchair.  The District Court denied the motion on September 16, 2013.  Docket No. 107.

Spencer filed a motion for summary judgment on March 4, 2013.  Docket No. 70.  On March 18, 2013, Shedlock filed a motion seeking a "stay" of the deadline for filing an opposition to Spencer's motion for summary judgment.  Docket No. 76.  On June 25, 2013, this Court denied that motion and ordered Shedlock to file his opposition to Spencer's motion for summary

---

[2] "[A] verified complaint ought to be treated as the functional equivalent of an affidavit to the extent that it satisfies the standards explicated in Rule 56(e) (in summary judgment milieu, affidavits 'shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.')."  Sheinkopf v. Stone, 927 F.2d 1259, 1262 (1st Cir. 1991) (citations omitted).

within three weeks. Docket No. 87.

Shedlock filed an opposition to Spencer's motion for summary judgment on August 1, 2013. Docket No. 94.[3] Spencer filed a reply on August 14, 2013. Docket No. 99.

II.     FACTUAL BACKGROUND[4]

Shedlock is a civil detainee, currently committed at the Center as a sexually dangerous person. Def. SOF ¶ 1. At all relevant times, Spencer has been employed by the University of Massachusetts Correctional Health as a Clinical Administrator. Def. SOF ¶ 2.

Shedlock has been using a wheelchair since 2005. Def. SOF ¶ 3. On March 4, 2011, Shedlock underwent spinal surgery at the Tufts Medical Center. Def. SOF ¶ 4. Following the surgery, Shedlock's wheelchair was left at the hospital. Def. SOF ¶ 5. On March 10, 2011, Shedlock was returned to the Center and was provided a wheelchair. Def. SOF ¶ 6. On April 26, 2011, Shedlock was seen by a registered nurse who noted that Shedlock "fe[lt] good" and was "in good control" with no current complaints of "any pain, issue, or discomfort." Def. SOF ¶ 7.

On May 3, 2011, Shedlock filed a grievance complaining about the condition of his wheelchair. Def. SOF ¶ 8. Spencer responded to the grievance on May 9, 2011, writing that Shedlock's wheelchair would be evaluated by a physical therapist to determine if repairs were

---

[3] In her reply, Spencer argues that the Court should strike Shedlock's opposition as untimely. Docket No. 99 at 2. This Court declines to recommend that the District Court do so.

[4] Because this case is before the Court on a motion for summary judgment, the Court sets out any disputed facts in the light most favorable to Shedlock, the non-moving party. See DeNovellis v. Shalala, 124 F.3d 298, 302 (1st Cir. 1997). The facts are derived from Defendant, Gina Spencer's, Statement of Undisputed Material Facts in Support of Her Motion for Summary Judgment ("Def. SOF") and Plaintiff's Statement of Undisputed Facts and Dispute of Defendant's Statement ("Pl. SOF"). Docket Nos. 73, 95.

necessary. Def. SOF ¶ 9. Shedlock did not appeal Spencer's response. Def. SOF ¶ 10.

On May 12, 2011, Shedlock was seen by a physical therapist, Dr. Mandalayawala, and Spencer. Def. SOF ¶ 11. At the meeting, Shedlock was given a new rolling walker and given instructions on how to use it. Def. SOF ¶ 12. Spencer maintains that at that meeting, Shedlock was advised by the physical therapist that both the current wheelchair and new walker were appropriate for his use. Def. SOF ¶ 13. Shedlock disputes that he was advised by the physical therapist that the wheelchair was appropriate. Pl. SOF ¶ 1B. Shedlock states that the progress note cited by Spencer deals with the walker only, not the wheelchair. Id. Shedlock had complained about being issued a walker that was too short, causing him severe shoulder pain. Id.

On June 18, 2011, Shedlock sent a letter to Spencer complaining of the condition of his wheelchair. Def. SOF ¶ 15. On June 24, 2011, Shedlock sent a letter to Spencer complaining of the height of the walker and stating that the walker was too short and causing him problems. Def. SOF ¶ 16.

On July 18, 2011, Shedlock was seen by a registered nurse in the Health Services Unit, who determined that the wheelchair was in "safe, working condition." Def. SOF ¶ 17. Shedlock sent a letter to Spencer complaining about the evaluation and the nurse who had performed the evaluation. Pl. SOF ¶ 2B. In the letter, Shedlock stated that the "bearings had fallen from their housings. The wheels are canting and, when the bearings fall out the wheels will lock. This poses the very real possibility that I will be ejected to the floor." Attachment 3 to Pl. SOF.

On August 16, 2011, Shedlock received an x-ray, which showed "mild degenerative changes of the distal acromioclavicular joint with inferior spurring of the distal acromion which

may result in impingement syndrome." Def. SOF ¶ 18.  On September 15, 2011, Shedlock received an orthopedic consult from Lemuel Shattuck Hospital, which found a likelihood of shoulder impingement syndrome, and recommended a right shoulder arthroscopy and resection. Def. SOF ¶ 19.  On November 1, 2011, Shedlock received a chest x-ray that found no significant changes from the August 16, 2011 x-ray.  Def. SOF ¶ 20.  Shedlock underwent a clavicle resection at Lemuel Shattuck Hospital on November 15, 2011.  Def. SOF ¶ 21.

On February 2, 2012, Shedlock was provided with a 9000 ride lite wheelchair.  Def. SOF ¶ 22.  On May 9, 2012, Shedlock was provided with a rolling walker.  Def. SOF ¶ 23.  At a hearing on Shedlock's motion for a temporary restraining order on February 5, 2013, Shedlock acknowledged that the 9000 ride lite wheelchair was in proper working order and that the issues with respect to the provision of a suitable wheelchair had been resolved.  Def. SOF ¶ 25; see also Docket No. 59.

III.   ANALYSIS

Spencer argues that Shedlock's claims are moot because he has acknowledged that he received a working wheelchair.  Docket No. 72 at 9-10.  Spencer also argues that Shedlock's claims must be dismissed because he failed to exhaust his administrative remedies as required by the Prisoner Litigation Reform Act.  Docket No. 72 at 8-9.  In addition, Spencer argues that Shedlock is not entitled to relief pursuant to Section 1983 because he has failed to allege a violation of a substantive right and, in any event, the medical care provided to him does not amount to cruel and unusual punishment.  Docket No. 72 at 4-8.[5]  For the following reasons, this

---

[5] In her reply, Spencer also argues that because Shedlock has not disclosed a medical expert who can testify that his alleged injuries are causally related to the use of a rolling walker, his claims must fail as a matter of law.  Docket No. 99 at 3-4.  The purpose of a reply

Court recommends that the District Court grant summary judgment in favor of Spencer and against Shedlock.

  A.  <u>Standard Of Review</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." <u>Sanchez v. Alvarado</u>, 101 F.3d 223, 227 (1st Cir. 1996) (quotations and citations omitted). A material fact is one which has "the potential to affect the outcome of the suit under the applicable law." <u>Id.</u> (quotations and citations omitted).

The moving party bears the initial burden of establishing that there is no genuine issue of material fact. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). If that burden is met, the opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts that would require trial. <u>See id.</u> at 324. "[T]he non-moving party 'may not rest upon mere allegation or denials of his pleading,'" but must set forth specific facts showing that there is a genuine issue for trial.[6] <u>LeBlanc v. Great Am. Ins. Co.</u>, 6 F.3d 836, 841

---

memorandum is not to file new arguments that could have been raised in a supporting memorandum. <u>Noonan v. Wonderland Greyhound Park Realty LLC</u>, 723 F. Supp. 2d 298, 349 (D. Mass. 2010). Arguments presented for the first time in a reply brief are typically waived. <u>See id.</u>; <u>see</u> <u>also</u> <u>Hypertherm, Inc. v. American Torch Tip Co.</u>, No. 05-373-JD, 2007 WL 2695323, at *2 (D.N.H. Sept. 11, 2007). Accordingly, the Court does not evaluate or rely on this argument.

 [6] Here, the <u>pro</u> <u>se</u> plaintiff generally has done a good job in meeting the requirements of responding to a summary judgment motion. However, even construing his pleadings liberally, this Court does not, as required by the law, consider allegations by Shedlock that are not supported by affidavits, depositions, or other documentation. <u>See</u> Fed. R. Civ. P. 56(c)(1); L.R.

(1st Cir. 1993) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).

The court must view the record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor. See O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). "If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate." Walsh v. Town of Lakeville, 431 F. Supp. 2d 134, 143 (D. Mass. 2006).

B.   Mootness

Spencer argues that Shedlock's claims are moot based on his acknowledgment that he has been provided with a working wheelchair. Docket No. 72 at 9-10. On that basis, the Court finds that Shedlock's claims for injunctive relief are moot but his claims for damages are not.

"A fundamental principle of the structure of our democracy is that federal courts are courts of limited jurisdiction." Destek Group, Inc. v. N.H. Pub. Utils. Comm'n, 318 F.3d 32, 38 (1st Cir. 2003) (citations omitted). "The power of lower federal courts is limited to jurisdiction authorized by the Constitution and expressly conferred by Congress." Id. Under Article III, Section 2 of the Constitution, federal courts may only adjudicate live cases or controversies. Thomas R.W. v. Mass. Dep't of Educ., 130 F.3d 477, 479 (1st Cir. 1997). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Am. Civil Liberties Union of Massachusetts v. United States Conference of Catholic Bishops, 705 F.3d 44, 52 (1st Cir. 2013) (citation omitted). "When a case is moot . . . a case or controversy ceases to exist, and dismissal of the action is compulsory." Cruz v.

---

56.1.

Farquharson, 252 F.3d 530, 533 (1st Cir. 2001).

Here, Shedlock has admitted that he has been provided with a safe and working wheelchair. See Docket No. 59. Therefore, his claim for injunctive relief requiring the provision of such a wheelchair was rendered moot and is subject to dismissal. Shedlock also brought claims for damages. To the extent that Shedlock suffered damages before he was provided with the new wheelchair, those claims are not moot. Accordingly, the Court recommends that the District Court dismiss those claims seeking injunctive relief based on the alleged failure of Spencer to provide Shedlock with an appropriate wheelchair.

      C.      Failure To Exhaust Administrative Remedies

Spencer argues that Shedlock has failed to exhaust his administrative remedies under the Prison Litigation Reform Act (the "PLRA") and, therefore, his claims fail as a matter of law. Docket No. 72 at 8-9. This Court disagrees.

Section 1997e(a) of the PLRA states that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA attempts to eliminate unwarranted interference by federal courts with the administration of prisons and affords corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. Woodford v. Ngo, 548 U.S. 81, 93-4 (2006); Porter v. Nussle, 534 U.S. 516, 524-5 (2002). The PLRA was intended to also reduce the quantity and improve the quality of prisoner suits. Id. The exhaustion of administrative remedies is mandatory and applies to any suit challenging prison conditions. Woodford, 548 U.S. at 85. A court cannot

consider an unexhausted claim. Jones v. Bock, 549 U.S. 199, 219-20 (2007). The PLRA applies to any action based on Section 1983 or "any other federal law." 42 U.S.C. § 1997(e).

The PLRA, however, applies to "prisoners." 42 U.S.C. § 1997e(a). The PLRA defines "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). As such, courts have held that the PLRA does not cover civilly-committed persons. See Phelps v. Winn, No. 05-40003-GAO, 2007 U.S. Dist. LEXIS 71602, at *3 (D. Mass. Sept. 27, 2007); King v. Greenblatt, 53 F. Supp. 2d 117, 138 (D. Mass. 1999). Because Shedlock is a civilly committed person, the provisions of the PLRA do not apply to him.[7] Accordingly, the Court finds that any failure to exhaust administrative remedies is not fatal to Shedlock's claims.

    D.    Section 1983 Claims

Shedlock alleges that Spencer violated the provisions of 42 U.S.C. § 1983. Section 1983 is a vehicle through which individuals may sue certain persons acting under the color of state law for deprivation of federally assured rights. Gagliardi v. Sullivan, 513 F.3d 301, 306 (1st Cir. 2008). Specifically, Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

42 U.S.C. § 1983. Section 1983 is "not itself a source of substantive rights, but merely provides

---

[7] In her reply, Spencer does not respond to Shedlock's argument that he is not subject to the provisions of the PLRA. See Docket No. 95 at 4-5.

a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393-4 (1989). Spencer argues that Shedlock is not entitled to relief pursuant to Section 1983 because he has failed to allege a violation of a substantive right. Docket No. 72 at 4-5. However, because Shedlock is pro se, the Court construes Shedlock's claims as a failure to provide adequate medical care pursuant to the Fourteenth Amendment to the U.S. Constitution. See Docket No. 96 at 5.

"A claim under Section 1983 has two essential elements. First, the challenged conduct must be attributable to a person acting under color of state law" and "second, the conduct must have worked a denial of rights secured by the Constitution or by federal law." Soto v. Flores, 103 F.3d 1056, 1061 (1st Cir. 1997). Spencer does not dispute that she was acting under color of state law. However, Spencer contends that Shedlock is unable to show that her conduct denied Shedlock any rights secured by the Constitution or by federal law.

As an involuntarily committed person, Shedlock has a constitutional right to basic and humane medical care provided by his warden, the State. See Youngberg v. Romeo, 457 U.S. 307, 319 (1982). Such right is guaranteed by the Fourteenth Amendment's Due Process Clause. Id. However, courts look for guidance to the Eighth Amendment's "deliberate indifference to serious injury" test in fleshing out the contours of the guarantee. See Battista v. Clarke, 645 F.3d 449, 453 (1st Cir. 2011); Burrell v. Hampshire Cnty., 307 F.3d 1, 7 (1st Cir. 2002) ("Pretrial detainees are protected under the Fourteenth Amendment Due Process Clause rather than the Eighth Amendment; however, the standard to be applied [deliberate indifference] is the same as that used in Eighth Amendment cases.").

Shedlock argues, however, that the Eighth Amendment "deliberate indifference" standard

does not apply to him because he is a civilly committed person. Docket No. 96 at 6-7; see Youngberg, 457 U.S. at 322 ("Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish."). The distinction is a valid one, although neither the Supreme Court nor the First Circuit has articulated a practical difference between the Eighth and Fourteenth Amendment standards in the context of institutional medical care. See Battista, 645 F.3d at 453. In fact, the First Circuit has stated that "fine-tuning" is unnecessary because "the two standards are not all that far apart." Id. Accordingly, this Court evaluates Spencer's motion under the deliberate indifference standard.

Deliberate indifference to a prisoner's serious illness or injury states a cause of action for a violation of the Eighth Amendment under Section 1983. Estelle v. Gamble, 429 U.S. 97, 105 (1976). To establish an Eighth Amendment violation, Shedlock must show that: (1) objectively, the deprivation alleged is sufficiently serious; and (2) subjectively, that Spencer was deliberately indifferent to his health or safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

A medical need is "serious" if "it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Gaudreault v. Municipality of Salem, 923 F.2d 203, 208 (1st Cir. 1990). The seriousness of an inmate's needs may also be determined by reference to the effect of a delay in treatment. Id.

An Eighth Amendment claim based on medical mistreatment requires more than "an inadvertent failure to provide adequate medical care" and must involve "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Feeney v.

Correctional Medical Services, 464 F.3d 158, 161 (1st Cir. 2006) (quoting Estelle, 429 U.S. at 105-106). Deliberate indifference "may be manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle, 429 U.S. at 104-5. Shedlock can demonstrate deliberate indifference only if the medical attention he received is "so clearly inadequate as to amount to a refusal to provide essential care" and must be "so inadequate as to shock the conscience." Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991) (citations omitted). Mere negligence or medical malpractice does not establish deliberate indifference. See Farmer, 511 U.S. at 835; Estelle, 429 U.S. at 104.

Although issues concerning state of mind, such as deliberate indifference, are often unsuited to resolution on summary judgment, summary judgment is appropriate when there is no evidence that a plaintiff received treatment "so inadequate as to shock the conscience." See Torraco, 923 F.2d at 234; see also Sires v. Berman, 834 F.2d 9, 13 (1st Cir. 1987) (finding summary judgment appropriate where the only evidence produced "demonstrated carefully thought-out medical decisions"); Massey v. Rufo, No. 92-1380, 1994 U.S. App. LEXIS 6202 (1st Cir. 1994) (finding that there was no material question of fact that defendants were not deliberately indifferent to the plaintiff's needs and that "discovery would not aid plaintiff"). Such is the case here.

After reviewing the record, this Court concludes that Spencer is entitled to summary judgment because Shedlock has presented no evidence that Spencer was deliberately indifferent to his medical needs. In March 2011, Shedlock's wheelchair was left at the hospital. Def. SOF ¶ 5. He received a new one six days later. Def. SOF ¶ 6. Upon receiving complaints in May 2011

from Shedlock about his wheelchair, Spencer had the wheelchair evaluated and it was determined that it was in proper working order. See Def. SOF ¶¶ 9, 17.[8] Later, in February 2012, Shedlock received a new wheelchair, which he acknowledges is in proper working order. Def. SOF ¶¶ 22, 25.[9] With respect to the walker, Shedlock asserts that it was too short for him and caused him injury. Docket No. 96 at 2. However, the record shows that medical personnel determined that the walker was the right size. See Def. SOF ¶ 13 and Ex. D. The record also shows that Shedlock received treatment from August to November 2011 for his complaints relating to symptoms allegedly caused by his use of the walker. Def. SOF ¶¶ 18-21. In May 2012, he also received a new walker. Def. SOF ¶ 23.

Even assuming that Spencer was mistaken about the wheelchair and the walker and perhaps acted negligently in failing to send the wheelchair and/or walker for further evaluation, mere negligence is not sufficient to establish deliberate indifference. See Estelle, 429 U.S. at 106. The Court finds that Shedlock has failed to point to any evidence that Spencer was

---

[8] Shedlock alleges that on October 6, 2011, after going up a wheelchair ramp in his housing unit, he stopped, applied the brakes on his wheelchair, grabbed the railing, and stood up. Pl. SOF ¶ 3. After readjusting his clothing, he sat down but because the brakes did not work, the chair had rolled away. Id. Shedlock fell and landed on his lower spine. Id. He was sent to the Health Services Unit for assessment. Id. These allegations were the subject of Shedlock's motion to supplement his complaint, which the District Court denied. See Docket Nos. 86, 107. However, even if the Court were to consider these allegations, they do not create a genuine issue of material fact as to whether Spencer was deliberately indifferent to Shedlock's medical needs. The documentation Shedlock submitted in support of the allegations indicates that Shedlock was offered a new wheelchair at that time but he refused it. Docket No. 95-4 at 2. In any event, these allegations, at most, show negligence, which is insufficient to establish deliberate indifference.

[9] In her memorandum of law, Spencer suggests that Shedlock received three different wheelchairs after returning from Tufts Medical Center in March 2011. See Docket No. 72 at 6. However, the record shows that Shedlock received only two wheelchairs, one on March 10, 2011, and another one on February 2, 2012. Def. SOF ¶¶ 6, 22.

deliberately indifferent to his medical needs and, therefore, there is no genuine dispute as to any material fact. Accordingly, this Court recommends that the District Court grant Spencer's motion for summary judgment.

## IV.    RECOMMENDATION

For the foregoing reasons, the Court recommends that the District Judge assigned to this case grant Spencer's motion for summary judgment and enter judgment in favor of Spencer and against Shedlock on all of his claims.

## V.    REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Phinney v. Wentworth Douglas Hospital, 199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir.1993).

      /s/ Jennifer C. Boal
      JENNIFER C. BOAL
      UNITED STATES MAGISTRATE JUDGE